[No. C003952. Third Dist. June 26, 1989.)

Conservatorship of the Person of LEON FRANKLIN SIDES.
TOMMY GENE SIDES, as Conservator, etc., Petitioner and
Respondent, v.
SHARON FAYE WHITSON, Objector and Appellant;
LEON FRANKLIN SIDES, Conservatee and Respondent.

**COUNSEL**

Harry D. Roth for Ojector and Appellant.

Tommy Gene Sides, in pro. per., for Petitioner and Respondent.

Jeri M. Symons for Conservatee and Respondent.

**OPINION**

**SCOTLAND, J.**—Sharon Faye Whitson appeals from an order appointing Tommy Gene Sides (Sides) conservator of the person of appellant's son, Leon Franklin Sides (Leon).

The primary issue raised is whether appellant, an indigent, was entitled to court-appointed counsel in the conservatorship proceeding commenced under division 4 of the Probate Code. ▉ We hold that the parent of a

proposed conservatee has no statutory or constitutional right to appointed counsel, and the trial court had no discretion to appoint counsel to represent appellant. ■■■ As to appellant's other contention, we conclude that the court properly proceeded without a court investigator's report.

## PROCEDURAL AND FACTUAL BACKGROUND

Sides is the adult cousin of Leon. They lived together from July 1984 through August 1987, when Leon moved into a group home following a dispute between Sides and Leon's father.[1] On June 18, 1987, Sides was appointed Leon's guardian. On December 4, 1987, Sides filed a petition for appointment as conservator of Leon's person, alleging that conservatorship was required because Leon is mentally retarded.[2]

At a hearing on January 11, 1988, appellant did not object to the conservatorship. However, she contested the appointment of Sides, because appellant wanted to be Leon's conservator. The court appointed separate counsel for appellant and Leon, and continued the matter for further proceedings. Counsel was not appointed for Sides.

On January 19, 1988, another judge presided and vacated the order appointing counsel for appellant. The parties were advised that the order was vacated at the request of the judge who appointed counsel for appellant, because he now felt "such an order was inappropriate, that it is not authorized under the Code . . . ." Counsel stated that he had told appellant the appointment probably would be vacated and informed the court that appellant was prepared to proceed. The court continued the matter and advised appellant she would have to retain counsel if she desired representation.

The petition for conservatorship was tried on January 26, 1988. Only Leon was represented by counsel. Leon testified that he wanted Sides to be appointed conservator. Indicating that he preferred not to explain why, Leon stated that he did not want to visit or live with appellant, his mother. He also did not want to visit his father, who had beaten him. Sides testified he had cared for Leon for approximately four years, had provided for Leon's medical and dental care, was involved in Leon's schooling, and would continue to properly care for Leon if appointed his conservator. Sides further testified that Leon was removed from appellant's home because of

---

[1] The father, from whose custody Leon had been removed due to physical abuse, accused Sides of striking Leon. However, the Redding Police Department investigated and found no evidence of abuse by Sides.

[2] Sides simultaneously filed petitions for temporary conservatorship and for authority to give consent for medical treatment. Both were granted on December 4, 1987, and letters of temporary conservatorship were issued to Sides on that date.

allegations of physical and sexual abuse. Appellant cross-examined Leon and Sides but did not present any additional evidence on her behalf.

The court sustained the petition and appointed Sides conservator of Leon's person. Appellant filed a timely notice of appeal.[3]

I

## The Parent of a Proposed Conservatee Has No Statutory or Constitutional Right to Court-appointed Counsel in a Conservatorship Proceeding

As an indigent, appellant contends that she was entitled to court-appointed counsel in the conservatorship proceeding, and that the court erred in denying her such representation.

Appellant first argues that the court should have appointed the Office of the Public Defender to represent her pursuant to Government Code section 27706, subdivision (d). This subdivision provides: "Upon request, or upon order of the court, the public defender shall represent any person who is not financially able to employ counsel in proceedings under Division 4 (commencing with section 1400) of the Probate Code . . . ." An action to establish a conservatorship is a proceeding under division 4 of the Probate Code.

Government Code section 27706, subdivision (d), is a general statute defining the scope of duties of a public defender. Probate Code sections 1470 and 1471 are more specific statutes pertaining to the appointment of counsel in proceedings under division 4 of the Probate Code. With respect to a conservatorship action, both of the latter sections authorize court-appointed counsel *only* for the conservatee or proposed conservatee.[4]

---

[3] The notice of appeal is "from the order dated January 26, 1988, which, amoung [*sic*] other things, order [*sic*] that the minor [*sic*] Leon Franklin Sides, be freed from the costody [*sic*] and control of his mother." While this notice, prepared by appellant, does not describe correctly the order from which she appeals, it does identify the order with sufficient particularity as required by California Rules of Court, rule 1(a).

Although counsel for the conservatee was directed to prepare the order, it is not included in the record on appeal. We shall assume letters of conservatorship were issued.

[4] Probate Code section 1470 provides in pertinent part: "(a) The court may appoint private legal counsel for . . . a conservatee, or a proposed conservatee in any proceeding under this division if the court determines that such person is not otherwise represented by legal counsel and the appointment would be helpful to the resolution of the matter or is necessary to protect the person's interests."

Probate Code section 1471 provides in pertinent part: "(a) If a conservatee, proposed conservatee, or person alleged to lack legal capacity is unable to retain legal counsel and requests the appointment of counsel to assist in the particular matter, whether or not such person

■ It is a basic rule of statutory construction that the terms of a more specific statute control over those of a more general statute where both speak to the same concern. (*People* v. *Jenkins* (1980) 28 Cal.3d 494, 501 [170 Cal.Rptr. 1, 620 P.2d 587].)

■ Construing Government Code section 27706, subdivision (d), together with Probate Code sections 1470 and 1471, we hold that appointment of the public defender in conservatorship proceedings is limited to representation of the conservatee or proposed conservatee. Accordingly, as the indigent parent of a proposed conservatee, appellant had no statutory right to representation by the public defender. Moreover, in accordance with Probate Code sections 1470 and 1471, appellant had no statutory right to court-appointed private legal counsel. (Cf. *Littlefield* v. *Superior Court* (1979) 98 Cal.App.3d 652, 654-655 [160 Cal.Rptr. 175]; *Brown* v. *Superior Court* (1981) 119 Cal.App.3d 189, 190-192 [173 Cal.Rptr. 803]; 52 Ops.Cal.Atty.Gen. 260 (1969).)

Next, appellant cites *Salas* v. *Cortez* (1979) 24 Cal.3d 22 [154 Cal.Rptr. 529, 593 P.2d 226], to support her contention that, as an indigent civil litigant, she was entitled to court-appointed counsel to represent her in the conservatorship proceedings.

■ The *Salas* court recognized that due process of law may include the right of an indigent defendant to appointed counsel in certain civil proceedings. Whether due process requires the appointment of counsel in a particular case depends on an assessment of the nature of the proceedings, the magnitude of the interests involved, including the consequences the party may face, and a balancing of these factors against the state's interests. (24 Cal.3d at p. 27.)

---

lacks or appears to lack legal capacity, the court shall, at or before the time of the hearing, appoint the public defender or private counsel to represent the interest of such person in the following proceedings under this division:

"(1) A proceeding to establish a conservatorship or to appoint a proposed conservator

. . . . . . . . . . . . . . . . . . . . .

"(b) If a conservatee or proposed conservatee does not plan to retain legal counsel and has not requested the court to appoint legal counsel, whether or not such person lacks or appears to lack legal capacity, the court shall, at or before the time of the hearing, appoint the public defender or private counsel to represent the interests of such person in any proceeding listed in subdivision (a) if, based on information contained in the court investigator's report or obtained from any other source, the court determines that the appointment would be helpful to the resolution of the matter or is necessary to protect the interests of the conservatee or proposed conservatee.

"(c) In any proceeding to establish a limited conservatorship, if the proposed limited conservatee has not retained legal counsel and does not plan to retain legal counsel, the court shall immediately appoint the public defender or private counsel to represent the proposed limited conservatee. The proposed limited conservatee shall pay the cost for such legal service if he or she is able . . . . ."

 In *Salas,* which involved actions brought by the county to establish parentage and obtain child support, the court found that appellants were at a "distinct disadvantage" in the proceedings. "Unlike the ordinary civil litigant, appellants were opposed by the full resources of the state, marshalled on the plaintiffs' behalf." (24 Cal.3d at p. 30.) In addition, appellants faced "severe consequences of a paternity judgment." (*Ibid.*) Adjudication of a parent-child relationship may disrupt an established family, damage reputations, expose a defendant to the deprivation of property for use in supporting the child, and subject the defendant to possible loss of liberty through civil contempt power or criminal prosecution for nonsupport. (*Id.,* at pp. 28-31.) The *Salas* court also noted that, although the state has a financial interest in opposing the appointment of counsel for defendants in paternity actions, such appointment furthered legitimate state interests in ensuring the accuracy and fairness of paternity suits and promoting settlement without the expense of trial. (*Id.,* at p. 33.) Balancing these factors, the court held that an indigent defendant in a paternity action in which the state appears as a party is constitutionally entitled to appointed counsel. (*Id.,* at p. 34.)

We find no similarities between the actions in *Salas* and the present conservatorship proceeding. Moreover, we find insufficient comparability between this matter and other civil proceedings which require appointment of counsel, i.e., quasi-criminal proceedings in which the defendant is subject to loss of personal liberty, such as juvenile offender proceedings (*In re Gault* (1987) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428]); actions in which absence of counsel would result in the unqualified deprivation of a prisoner's access to the courts to protect his or her property rights (*Payne* v. *Superior Court* (1976) 17 Cal.3d 908 [132 Cal.Rptr. 405, 553 P.2d 565]); and proceedings to terminate parental rights or remove a child from parental custody (*In re Jacqueline H.* (1978) 21 Cal.3d 170 [145 Cal.Rptr. 548, 577 P.2d 683] and *In re Jay R.* (1983) 150 Cal.App.3d 251 [197 Cal.Rptr. 672]).

Appellant was not at a distinct disadvantage in the conservatorship proceedings, since Sides was not represented either, and appointed counsel for Leon served not as an adversary but as a protector of the rights of the proposed conservatee. Even if Sides had appeared with retained counsel, this is not an action prosecuted by the full resources of the state; it was brought by a private party who already had been declared Leon's guardian. While the conservatorship proceeding involved the relationship between appellant and her son, it did not subject appellant to loss of custody of Leon or severance of a parent-child relationship. Leon is an adult who already had been removed from appellant's custody as a minor because of sexual and physical abuse. Even though developmentally disabled, as an adult

Leon has a right not to have contact with appellant if he so chooses.[5] (Welf. & Inst. Code, §§ 4501, 4502.) Furthermore, a conservatorship does not have the same permanent impact as a paternity action or proceeding to terminate parental rights, since the conservatorship must be reviewed one year after establishment and biennially thereafter, and is subject to modification by the court. (Prob. Code, § 1850, subd. (a).) Moreover, appellant was not deprived of access to the courts to contest the petition for appointment of a conservator, and the conservatorship proceeding did not subject her to deprivation of property or possible loss of liberty. As to the need to obviate the risk of an erroneous or unfair result, this interest is satisfied by Probate Code sections 1470 and 1471, which provide for court-appointed counsel to represent the proposed conservatee. ■ Appointed counsel does not act as an adversary against those competing for appointment as conservator, but serves as an advocate for the conservatee to ensure that the best suited person is appointed conservator. The interest in promoting a proper outcome also is protected by the ability to review, modify and even terminate the conservatorship.

■ The only consequence which arguably falls within the criteria of *Salas* is the possible damage to appellant's reputation which could be caused by a court order designating someone other than appellant to serve as conservator of the person of her son. Considering the fact that Leon already had been removed from her custody as a result of sexual and physical abuse, the potential damage to appellant's reputation would be minimal at best.

On the other hand, the state has a significant interest in the fiscal implications of court-appointed counsel in conservatorship proceedings if such representation were guaranteed for parties other than the proposed conservatee. The financial ramifications could well be extraordinary. (Cf. *Salas* v. *Cortez, supra,* 24 Cal.3d at p. 42 (Richardson, J. dis. opn.).)

Balancing the factors, we find that the parent of a proposed conservatee is like the ordinary civil litigant who is not entitled to court-appointed counsel. Accordingly, we hold that the court did not err in denying appellant appointed counsel to represent her in the conservatorship proceeding.

---

[5] It is the policy of this state that a developmentally disabled person should have the same legal rights and responsibilities guaranteed all other individuals (Welf. & Inst. Code, § 4502) and be able "to approximate the pattern of everyday living available to nondisabled people of the *same age*." (Welf. & Inst. Code, § 4501 (italics added).)

II

*A Court Investigator Report Was Not Required*

■ Appellant asserts that the court should not have proceeded without the report of a court investigator. We note that appellant failed to raise this issue in the trial court. "It is generally considered unfair to the trial court and the adverse party to consider procedural defects that could have been raised below but were not." (*Menefee* v. *County of Fresno* (1985) 163 Cal.App.3d 1175, 1182 [210 Cal.Rptr. 99].) Nevertheless, we will address appellant's contention because it only presents a question of law with no factual disputes. (*Ibid.*)

■ Probate Code section 1454, read in conjunction with Probate Code section 1826, requires the appointment of a court investigator and receipt of an investigator's report only when the petition alleges that the proposed conservatee is unwilling to attend the hearing or upon receipt of an affidavit or certificate attesting to the medical inability of the proposed conservatee to attend the hearing.

The rationale for requiring appointment of an investigator only in cases where the proposed conservatee is not expected to attend the hearing is explained by comparing the provisions of Probate Code section 1826, which lists the responsibilities of the investigator, and the provisions of Probate Code section 1828, which lists the information the court must convey to the proposed conservatee. The duty of the court investigator is to ensure that a proposed conservatee who is not expected to attend the hearing is aware of the contents of the citation, the nature and effect of a conservatorship, the right to attend the hearing and oppose the proceeding, the right to request a jury trial, and the right to representation by legal counsel, including a court-appointed attorney if the proposed conservatee is unable to retain counsel. In addition, the investigator is responsible for determining, among other things, whether the proposed conservatee will attend the hearing, contest the establishment of a conservatorship, oppose the proposed conservator, or request the appointment of legal counsel. The investigator then must provide this information to the court in a written report at least five days prior to the hearing. Since the court is required to explain this same information to a proposed conservatee who is expected to, and does in fact, attend the hearing, there is no need for an investigator to duplicate this function.

Moreover, appointment of a court investigator and receipt of the investigator's report are intended to protect the rights of the proposed conservatee. Here, the petition indicated that Leon would attend the hearing. Moreover, not only did Leon appear, but the court appointed counsel to represent him.

Leon's interests were adequately protected by the court's compliance with Probate Code section 1828 and the representation of court-appointed counsel. Accordingly, receipt of a court investigator's report was unnecessary, and the court did not err in proceeding without the report.

### DISPOSITION

The judgment (order) is affirmed.

Puglia, P. J., and Marler, J., concurred.